He's all rise. Here to be here to be this honorable appellate court for the second judicial district is now back in session. The Honorable Susan please be seated. Your honor, the final case on the docket this morning is 2-23-0061. People of the state of Illinois plaintiff's appellate, Michael S. Main, defendant's appellant. Arguing on behalf of the appellant, Mr. Fletcher E. Hamel. Arguing on behalf of the appellate, Ms. Stephanie O'Keefe. Okay, Mr. Hamel, you may proceed. Good morning, your honors. Good morning. I'm Fletcher Hamel. I represent the appellate counsel. Your honors, this case presents four issues. And since I anticipate time to be a factor here, I will just jump into the first two. The first two issues raised in this case, both are rooted in this same pretrial, in-camera, ex parte meeting between the defense attorney. Wait, let him talk. Go ahead. I want to hear what he says. Go ahead. Okay, the meeting between defense attorney Jed Stone and Judge Boris in which... Was there a prosecutor present? I don't know. And that's... Let me ask you this. Throughout your brief, you say ex parte, you call it a secret meeting. The defendant himself, at least three times in the record, said that prosecutors were present for the meeting. He does. I don't know how he knows, to be honest. Because he was in the courtroom. But he was... Let me ask you this. Is that not a judicial admission by a party? I don't think the defendant was in the courtroom when the meeting with the... He calls it in-camera, not ex parte. With the assistant state attorneys, I'm not sure if it was both of them. So the way I look at it, this has got you potentially prejudiced. They got potentially prejudiced. That's at page 1359 of the record. Page 1373 of the record, the defendant is telling the court, you need to allow him to withdraw. At that moment, you didn't allow him to until he came to your chambers and said whatever he said. I still, to this moment, don't know exactly what he said. He said it to you. He said it in front of the assistant state's attorneys. Both of them. Again, the defendant says, I believe this is... It's a different proceeding, 3481. But I believe that when he entered your chambers, he advocated for himself and said it for his time. I also believe that he didn't necessarily mean to do that, but that's what happened. But he also did it in front of the state's attorneys. So... But here the defendant is remanded. I'm looking at a statute, too. And I'm not arguing with either of you. I think I'm just as confused. But he says the defendant is remanded until tomorrow morning at 9. And he said, am I able to attend the meeting? And Oris says, no. I will not permit the defendant in an in camera inspection. I'll hear from Mr. Stone if there's something that I... If I have a question in my mind, Mr. Maine, this is not... It's an issue that has risen between you and your attorney. I will give you an opportunity to respond if need be. So it sounds like they took the defendant away and said, I'm going to meet with Mr. Stone tomorrow morning at 9 a.m. Well, I believe that's... You wouldn't bring the defendant up until... Yeah. And in response to Justice Burkett, I do have information about why the defendant thinks that the state's attorney was in that meeting. It's not in the record. I would simply say I don't know if the state's attorney was in that meeting or not. And I base that mostly on the transcript of that hearing. Whether or not the state's attorney was in the meeting, the defendant was not. That's the important thing. Right. Well, it's not... If the state's attorney was there, then it is not an ex parte meeting. And you don't discuss Supreme Court Rule 2.9 of the Code of Judicial Conduct that governs ex parte communication. But there are exceptions to the rule. But if the state's attorney was present, which the defendant says three times that the defendant was present, or I mean the state's attorney was present, I'm sorry, that takes it out of the realm of an ex parte meeting, the appearance of impropriety, because both parties are represented. I would disagree with that. Do you think it makes a difference, though, if the state's attorney is present? I do not think it makes a difference. Other than I'm actually, I think it would be more prejudicial to the defendant if the state's attorney is present because of the nature of this meeting. Well, whether he's present or whether he is not present, you're asking that Justice Judge Boris should have done a sua sponte recusal because there was an appearance of impropriety. That issue wasn't raised, so it's forfeited, correct? That's correct, yes. We're asking to look at it in plain air. That's correct. Okay. I went to Supreme Court Rule 63C1A, talking about recusal. Is not this issue the same as, for instance, an objection, where the defendant does not object? The evidence comes in and then he says, wait a minute, that evidence shouldn't have come in. He forfeited it. How do you expect to know why a judge didn't recuse himself if a motion for substitution of a judge or a motion for recusal wasn't filed? Well, Ann, one thing I would point out is the defendant did personally object to this meeting being held outside of this process. Yeah, he objected to that, but did he ever ask the court to recuse himself? No. So how do you have an error? How can we get into the mind? It's a subjective assessment on behalf of the judge. How do we get into the judge's mind if there was not a motion for substitution or a motion for recusal which goes to a different judge to make all of these inquiries? Well, I think that — and I think Your Honors can review the record and can look at what happened and review whether or not there was, you know, an appearance of an impropriety that could not be dispelled. And I think the record in this case plainly makes that showing. Does it or doesn't O'Brien hold that it's up to the judge to decide whether or not he is going to recuse himself? If a defendant couldn't have moved and requested that the court recuse himself, he could have filed a motion for substitution of judge, but he didn't either. Well, he — I mean, under O'Brien, he probably could not have filed a motion for that. What I'm saying is that a defendant cannot, you know, use this as a sword to remove a judge. But, again, this court can look at this record and can review this decision by this judge the same way it reviews any other decision by a judge. And I don't think O'Brien goes so far as to say that this judge's decision is unreviewable. And, in fact, I will point out People v. Hymthorne, which is cited in all of the briefs, I believe, but it's eight years after O'Brien, and the Apollo Court reviews this issue and, you know, in that case concludes that the judge was not required to recuse himself. But this court is capable of reviewing this. I mean, we do have a pretty — I mean, it's not a perfect record, but we do have a pretty good record of what happened here. And we can certainly say without question that this was an indefensible meeting. I mean, this just didn't need to happen. It's not appropriate. Well, Mr. Stone said on the record that he consulted with the former director of ARDC, Mary Robinson, and I forget the other — Professor Mike Fabian. I think it was Richard Kling. I think it was — Oh, right, right, right. Here's another case. You say this is structural error. What authority do you have for that? I have a good sight. I cited a case in my opening brief. I don't have the citation. You know, I looked at the, you know, various cases that discussed structural error, a complete denial of counsel, denial of self-representation at trial, trial before a biased judge, racial discrimination in the selection of a grand jury, defective reason without instruction. And there have been cases that have said that improper denial of the right to counsel of choice can be structural error. I think this would fall under potentially a biased judge. Yeah, but doesn't O'Brien say if you're going to raise that issue, you need to make a motion before the court? I think — You have to request that the trial court recuse themselves. He didn't do that. You have to make a motion to substitute judge if you want to substitute judge. S.O.J., right. But actually, I actually think O'Brien says the opposite in that — It says — You can't move for a substitute judge. No, you can't, but you have to make a motion for the judge to recuse himself. Or you have to ask the judge to recuse himself. I think O'Brien is actually saying, and I think the State's going to say the same thing, because I think that's the crux of their argument, is that O'Brien says that you cannot move for recusal. You can make the judge aware of facts that would require recusal, but the initiative for recusal comes entirely from the judge. And that's actually said more succinctly in S.D., which is a case study in the State's brief, where the State — where the court calls that the — you know, they say it like this, basically, that the defendant — a party can make the judge aware of facts but cannot — but the state's expectations move to recuse the judge. So I don't think — so I don't think that — again, this is being a view-bender play here, but it is still — you have an adequate record to make this ruling. And — Isn't it subjective? I mean, as I said previously? Well, I — there's a line, though. There's a — you know, there's a bottom line where you go under, and you have to recuse yourself. And that's what we see in, like, Wheatley and Bradshaw, you know, the cases that I relied on in my opening brief. You know, there are points where a judge can refuse to recuse himself and be wrong. And if you look at, you know, the case law in total, the cases that both sides rely on here, there is a clear line of that when the judge is blameless, generally courts — in all those cases, the courts find they were not required to recuse themselves. And then in cases where the judge shared some of the blame for creating the situation that caused the appearance of impropriety, those are the cases where the courts find that they were required to recuse themselves. And that's, you know — and so, you know, a case like O'Brien — No, I was going to say that the court did come out on the record and explain — Right. — what took place at the meeting. And that was later explained during the course of the defense motion for new trial, explained what the meeting had said. He didn't recall actually Mr. Stone giving him any specifics. Just it was a general explanation of why he wanted to, you know, withdraw. He thought it would look bad to a jury if he just put his client on the stand and had his client tell a story. And it reminded me of a case that I actually prosecuted, a people versus Arthur Taggart, where the assigned attorney had the same — actually went through two lawyers. The first lawyer was allowed to withdraw because he would not — could not ethically present the defense that the defendant wanted. He wanted to present a defense of consent in child sexual abuse cases. The next lawyer was a public defender. And he saw exactly the same situation as here. We met with the court. The state's attorney, Mr. Bruckauer, was the lawyer. And the judge did not allow him — he allowed him to withdraw, but appointed him as standby counsel, and Mr. Taggart testified in a narrative. That was a — but it looked very bad in front of the jury. And it does look bad. It looks terrible. And so Mr. Stone, you know, we take him at his word. He's an officer of the court, had a legitimate concern that if he put his client was insisting on testifying, he was between a rock and a hard place. Oh, that's correct. But he said all of this in open court. So you're — Right. No, no. You're correct. You said that we had a particularly good record in this case. You said that just about two minutes ago. And because we have that record, we have to look at the record. We can't speculate about what else happened. The judge is pretty clear. Mr. Stone is pretty clear. And if we look at that record, we can determine if this judge is biased for or against Mr. Main. It does not appear, if you look at that carefully, that he learned anything he should not have heard because everybody was using very careful language. Well, this is what we have. We have Stone before the meeting. First of all, perfectly laid out what Justice Burkett described, a Knicks versus Whiteside scenario. That's what we did. Go ahead. He had a Knicks versus Whiteside scenario. He laid it out as well as you should lay it out as a defense attorney in open court. He then said, this is based on, quote, confidence that I would like to tell you about, judge, but I don't want the rest of the public in the courtroom to hear it. They go to the meeting with that comment. And then after the meeting, this is on, I think, page 233 of the record, Judge Burris says to the defendant, while he's admonishing him as to why he's letting Stone off the case, says, there were matters that you discussed with Mr. Stone that put Mr. Stone in this position. Those are all very, as about as clear as you're going to get, admissions that they had talked about attorney-client privilege and material. Maybe. Or maybe Stone just said, hey, look, we've talked about matters that are really making me uncomfortable, and I don't want to represent them. He already said that in open court, though. Yeah. So why have the meeting? Well, I think the question is, is it plain error? Is it structural error? And, you know, if it's not structural error, then you'd have to demonstrate prejudice. And in your brief, you've not raised a single evidentiary ruling or procedural error that demonstrated bias or prejudice by Judge Burris. I mean, if Judge Burris made every single evidentiary ruling and relevant sentencing ruling in this case, if he did these things, particularly the sentencing issues, while knowing that Mr. Main took this case to trial after telling his attorney, you know, basically that he's guilty, right? I mean, that's the implication. And, you know, forced his teenage daughter to testify at trial after telling his attorney, you know, whatever he told him, that is potentially highly aggravating information. And then you look at the sentence that he gave, which is 120 years. He initially gave him 126. That, you know, it is certainly, certainly conceivable that he was prejudiced when he. . . But the jury was the fact finder here. The jury wasn't involved in any of these conversations. The jury didn't even hear what happened after they came out of the, not ex parte, but after they came out of this meeting. So if he did know some facts, and I really don't think he did based upon his statement on the record, it was how was he prejudiced by that. And as Justice Burkett said, there isn't really any place that you've identified a prejudice other than it looks bad. You're talking about sentencing. Let's go to sentencing real quickly. The one act, one crime principle, you raised that issue, and I kind of have a question on that. Good. Tell me where you think there was a one act, one crime violation. It's, well, it's counts 11, 12, and 13, which basically allege three separate acts of sexual penetration with an object. And, well, I laid it out in the brief, but I think the victim's testimony described two, two such acts. So you have three convictions, two acts. And so that's where I ask that count 13 be vacated. Even if we were to disagree with you that this is not structural error, doesn't the case still have to go back because of the Krenkel issues? And Judges, would you consider the Krenkel? I absolutely, it should, because as much, and I actually, I feel sympathy for Judge Boris in this situation, because seven Krenkel motions is a lot.  And four Krenkel hearings are a lot. But I think the case law is clear on that, that if a defendant raises new claims after having a Krenkel hearing, he's entitled to a successive Krenkel hearing. There's good reasons for that that's laid out in the case law and in my brief. And those reasons apply just as much to a fifth Krenkel hearing as they do to a second Krenkel hearing. But at one point, can't the court, after being on the case so long, make a determination if in fact any issues rise to the level of Krenkel hearing? I mean, defendants filed like two more Krenkel hearings during the motion to reconsider his sentence. And Judge Boris found that they were dilatory and frustrating the process. So does he have to have a Krenkel hearing every single time the defendant files a motion? I think the case law actually makes clear that he does. And he at least has to review it and make a statement as to why they lack merit. Right. Right. And certainly if it was all the same issues, he could say these are the same issues. And we don't, I don't need to, you know, inquire at counsel all that. But there were two new issues in those last two motions. And they, in fact, went to sentencing, which had happened after the fourth Krenkel hearing. So these were issues that couldn't have been raised before. So there should have been a Krenkel hearing. Do they have to be the same actual words? Or do they have to just complain about the ineffectiveness in a broad term of counsel in not doing something? I mean, because that's what I think Judge Boris found. I've heard this before. And it applied to Jed Stone first, and now it's applied to, and I apologize for not remembering the name of the attorney who handled the case. But I've heard this before, and I've already found that this is not a problem. So why couldn't he do that since he was the only judge who had his hands on this case? He hadn't heard it before. He hadn't heard anything in that motion before. There were two new issues in that motion, or in those motions. So he had to do a Krenkel inquiry into those two new issues. I agree that if they were the same issues that hadn't been raised before, he could say, I've looked at this. Every one of these issues was covered in the last Krenkel inquiry. I don't need to do it again. That I wouldn't be complaining about. But because there are two new issues in the motion, he can't say that. Unless Your Honor has any further questions, ask the jury man for a new trial or alternatively further post-trial proceedings and to vacate count 13. Thank you, Mr. Hamill. Ms. Lee. I'm sorry. I forgot one of the names. Ms. Lee. Yes, thank you. Good morning, Your Honor. I was looking beyond you, and I thought, wait, wait, who am I talking to? Right. And I do confuse people with the Hoyt. You're going to have to move that microphone down. Mr. Hamill is just a little taller. He is. Powerful. Good morning, and may it please the Court. Stephanie Lee for the people. If I could, I'd just like to briefly discuss the sufficiency of the evidence so that we make sure we do cover that. The State never, never said it had to be three times over three separate days, but the State was extremely clear that it had to be at least three times with the vibrator. This was a vibrator that had the defendant's DNA on it, the victim's DNA on it, and the mother's DNA on it. We have 17 convictions, an extremely, extremely overwhelming case. What the State said is that the victim testified he abused me three times during that week where I was sick with a migraine, I was throwing up, and he comes in and abuses me. We do agree that our allegations as to the vibrator were specific to that week. However, they do not all have to be on the same day. What happened later, she said he touched, he tried to put it in, he couldn't get it in. It was, I said, ow. He took it back out, and then he touched it to my clitoris, and then another day he did it again. That's three. Defense is taking the position it's two, the first day and the second time. We're taking the position that it was at least two on that same day, and that's sufficient. And so I don't think there's any dispute of that. I don't think our argument, he did abuse her maybe three times, three days during that week. But his abuse of her over time and even probably during that week, he penetrated her anus. He put lotions in her. He used a condom.  Let me look at the record. Is the comment by Judge Boros in having this meeting in chambers, whether the state's attorney is present or not? In your brief, you take the position the state's attorney is present. Absolutely, and I have four reasons. And I assume it's premised on the defendant's statements. It's four things, four reasons, actually, and some of them you've mentioned. The defendant's post-trial motion, which was filed at C1136, it says at least one state's attorney is signed to the case. You do have defendant's own statements. He did it in front of the state. You also have the actual record when this happened on page 229 of R of the record. I will seek counsel in chambers and examine what Mr. Stone has to say in camera and review in camera. So counsel is, it can be plural, and why would he say all this? It can be single, too, can't it? It is single, yes, sure. And isn't, and I don't think this is a great big deal, but I'm just reading it differently than Justice Brewer has. But, I mean, he took, they then took the defendant back into custody. And then the next day at 9 o'clock, Judge Boros has a conference with Judge Stone, maybe the state, maybe not the state. The only reporter here is the defendant. The defendant wasn't there. I had one more point, though, that I would like to point out. Attorney Stone's words when he was at 1490 to 92, he said, I can't recall exactly what was said, and there was no court reporter. I will have to rely on others to remember. Others means more than one as well. So if it was just saying I have to rely on the judge to remember, he would have said that. Also, again, back to 229, if he said I'll seek counsel in chambers and examine Mr. Stone, it does appear that he's talking about counsel plural and then asking and talking up to Mr. Stone, Attorney Stone. So I do absolutely 100% believe that the state's attorney was in there. If the court met alone with Mr. Stone, that would violate Supreme Court rule, the whole Court of Judicial Conduct 2.9, which is ex parte communications. Correct? If judges review. It's not raised. It's not raised. No, no, I agree. I agree. The claim is raised that it was that it was error. Right. And the situation you have here that the judge found himself in, Attorney Stone had been representing the defendant for three years. He's trying to withdraw. Obviously, he is making some statements about why, alluding to statements of why. The state at that time objects, hey, we're right before trial. We've got a victim. This is not fair. And the defendant is objecting loudly and confusingly. He's actually saying he's taking my money. He doesn't want, he wanted my money, and that's what this is about. And it's also that I can't, without the money, I can't get a new attorney of the same caliber. And yet he's complaining about his performance of the discovery, which actually everybody bent over backwards in this case to make sure the defendant got to see the discovery. Stone basically admitted that he was pushing to get a deal. Yeah. And when that didn't pan out, then he's withdrawing. Actually, the record shows that there was what I would say would be an amazing deal on the table, and the defendant wasn't taking it. So that's a concern. But I think that the judge needed to see, for the victim's sake, for the state's sake, for the witness's sake, for the defendant's sake, what is really going on here. And when the defendant was in the courtroom, it was disruptive over and over and over again. Judges review in-camera information all the time and still hear cases. They also have a case, you could have a case where a defendant actually pled guilty, moved to withdraw his plea, and then the same judge goes and hears the case. The law presumes that a judge is not biased, is not going to be. To the extent the defendant thought otherwise, a substitution for cause would have required the judge to either testify or do an affidavit in front of a new judge. That was his remedy. Defendant did not bring this up until he lost the case. And that says a lot. And, in fact, as Your Honor pointed out, there is not a single claim of error as to the judge's conduct here, and it was a jury trial. As to sentencing, you were talking about a minimum, because of the 17 convictions, of 80 years. He did end up with 120. I actually, they had to run concurrent. Possibly you could have even made an argument that they weren't the same course of conduct with the same mental state, and you could have even gotten more than 120. So, you know, there's no bias there. There's no anything there. The defendant argues that he does not have to show bias because this is structural error. Correct. And I agree with Your Honor that structural error is a very, very narrow class of category of things. And, as you said, bias would be one, but there's no bias here. But there's also cases that say the improper denial of the right to counsel of choice is structural error. And allowing the attorney, Mr. Stone, to withdraw was predicated on his in-camera meeting with Mr. Stone, and then it led to the denial of defendant's counsel of choice, which is and has been characterized as structural error. Except counsel of choice obviously wasn't raised here even on appeal. So, however, defendant's own statements were, first he said his attorney was lying. Something about it sounded like he was saying, I wasn't even going to testify. Well, he accused Mr. Stone of just trying to get more money, and then when he didn't have money. Yes, and he also said, I wasn't going to, I wasn't saying I was going to testify, which is a direct contradiction to obviously what we're assuming based on the, that he was going to put him on the stand. And so, can we move on after? Sure. Did you have another thought? I'm sorry, what? Did you have another thought about this? Oh, well, if you wanted to talk about Crankle, I would. I do. Okay, I thought so. So, Crankle, my understanding of what they're raising is it's the final Crankles that were, during the time when we were already on motions to reconsider the sentence. Defendant was already in DOC. He was asking to be written back. Counsel was a new attorney, not even the ones that had, the one that had, it was public defender, but it was a new attorney. And you were talking now about a sixth and seventh Crankle when you had over, the same thing over and over. The court did say, I don't think these are Crankle. The court did say that. And essentially, you're saying that, or the counsel is, you know, saying that there can never be an end to this when the judge finds that this is frivolous, repetitive behavior. If there's anything here at this point, it's no longer a conservation of resources because you could actually bring another proceeding as well. The defendant wanted to be written back to a proceeding that even counsel agreed he did not have a right to be at. And it's very much like those cases that the people had attached where, you know, or if I just say the word Crankle, I get, you know, to be heard on whatever I want to say. And these, these that are at issue, these two, I guess, motions that are at issue, as Mr. Hamill has talked about, came at sentencing. And of course, sentencing would not have been an issue prior to the time of conviction. So what exactly was the same allegation concerning sentencing that he had seen before concerning the trial counsel or even Stone withdrawing? Well, the combined statements had to do with they were all over the place. So they weren't just sentencing. It's correct that there was never anything raised before, but they actually had a motion to reconsider the sentence, which was going to be heard. So, and the other thing, again, is if you're only related to sentencing here, he had a minimum of 80 years. I don't know where that's going anywhere. Well, you know something about the record in this case, which I think supports the defendant's position, Mr. Stone was all over the record talking about getting a deal, not putting the victim through this, staring at the parties. So Judge Burroughs was well aware that based upon his communications with the defendant, his only option was a good plea deal. So what was new that would allow Mr. Stone to withdraw? Well, I don't think. Just that the defendant wanted to testify. Oh, oh, that, that. Yes, I'll get back to that. No, I'm just talking about. Everyone was aware of the fact that the defendant really had no shot at a trial. Correct, and that's why the defendant wanted to try to use his speedy trial, and that's how he raised the withdrawal. Right. And guess what? Speedy trial isn't raised here. But as far as sentencing issues, and, you know, again, at that point he's been convicted, so you're talking about sentencing. It's an 80-year minimum anyway, and that doesn't have to do with the withdrawal of counsel. Even here we don't have any sentencing error alleged. Well, we don't say we'll give you a crankled hearing if you can't get a better sentence or you're looking at a minimum mandatory anyway, do we? Well, you have to have some reason that could be an ineffective assistance of counsel, and what we're saying is it's sentencing only. It could only be as to sentencing and be new. So what as to sentencing is the claim here that in any way the public defender was ineffective at sentencing, and in fact then what do we have here to show that anything was ineffective at sentencing? Nothing. So I do think you can look at the crankle and see this is rebutted by the record. This was raised before. This is not going to be a spilling of resources because I would actually have to writ this defendant back in, and you have counsel my recollection is that counsel said he was not adopting those points, and the judge did at least say I don't see this as crankle. So I understand you could add infinitum, say crankle, crankle, crankle, which is exactly what was happening in the justice and the teen cases where it wasn't okay to say enough. Was it at that hearing that the judge went from 126 to 120? It was at the reconsideration, yes, and to be honest, when I look at the statutory scheme, in order to be capped at the 120, it would have to be the same course of conduct with no substantial change in mental state, and that is actually not what I would argue happened here. So I don't even know that it was legally capped. I don't know that that argument was made. I agree. My point is it was at the time when he, was it at the time when he said I don't think there's any crankles? No. Yes, yes, but nobody had raised the cap until that point, and obviously that shows also, oh, you're right, I will reconsider myself and reduce that sentence because that's the right thing to do. That doesn't necessarily show bias. It wasn't pointed out before that that I'm aware of. It was now pointed out and raised, and the judge reconsidered and amended the sentence. That's the opposite of bias. Thank you. I think I answered, though, I would like to say why have a hearing? That came up. Why have the hearing? That can be your last thought. Okay, and why have a hearing was when you have the state, you're three years into it, you have all this objection, all of this accusation, the judge would have had a duty to find out why is this happening, and that's what the judge was trying to do. We have 20-20 hindsight of whether we would have done this meeting. That's not how you review that. Thank you. I would ask the court to affirm. Thank you. All right, Mr. Hamill, if you want to respond, this is the time. Thank you. Starting with the first two issues, I think Joseph had hit the nail on the head here. Everything you could legitimately know. You're just going to make me do it. Everything there was to know, everything legitimate that there was to know about Judge Stone's conflict of interest was known. So why have this meeting? What could possibly have been said in this meeting, other than repeating what had already been said in court, that convinced the judge? And then when you add in the fact that Stone is there saying, I want to talk about confidence, and Judge Boris has come out of me saying, boy, you should discuss things with Mr. Stone to put him in that position. Yeah, but I think if you look at that record, Mr. Stone said, or the judge said, hey, look, he was trying to get you a deal and you wouldn't take it. He thought you should take a deal. End of discussion. And he can't try you effectively if he thinks you should have taken this deal. Now, again, we're speculating what was said there. But this is what was said here in the record. They were saying more than that, though. Well, there was the ethics considerations. They're speaking about NICS. Someone was talking about NICS. There's post-conviction possibilities here because, as your client said multiple times, he continued to consult with Mr. Stone even after he was allowed to withdraw and a public defender was appointed. And he consulted with Mr. Stone on whether or not there had been a violation of the defendant's right to a speedy trial, which is not raised in this appeal, and it's pretty much going to be forfeited, unless somebody accuses you of being ineffective. I'm going to check. The reason for those questions is there's a lot here. What's on the record is what we'll review on direct appeal. How do you defend statements that the state was present? I would agree with you that a post-conviction petition is going to be a possibility here. But I'll move on to the Cranberry issue. Oh, and I'm sorry. I want to make one other point, one other quick point on this, because it was partially my fault for lumping these two issues together here. But that second issue is actually distinct from the first, and that goes to Judge Boris's whether or not he could hear that motion for a new trial where the defendant challenged his participation in that meeting. And that motion clearly relied in part on what was said during the meeting. And what was said in that meeting is disputed facts, because we don't know. And Judge Boris had personal knowledge of those facts. That's right under the language of Rule 63. And as far as prejudice goes on that issue, Judge Boris prejudged that motion based on his recollection, and he made it very clear on the record that he did. So even if that first issue perhaps doesn't have the record to go over, the second issue is a more confined issue and does have more of a record. But the remedy for that would be to remand the cause for a new post-trial motion, not for a new trial. It would be for another judge? Yeah, it would be, yes, because on the Krinker issue, Wilberson deals with most of what the State brought up. That's a case where the ineffective assistance of counsel allegations were made after sentencing, during the post-sentencing motion period. Defendant Wilberson did have different counsel on the motion to reconsider sentence. The appellate court nevertheless found that the Krinker hearing was required. And like I said, the reasons for this are good. There are good reasons. There's a need to have these inquiries, get these claims in the open, on the record, where the judge can pass on it, where the war honors can review it. It's worth the five minutes to ask the defendant, you know, present your claims and turn to counsel and present your claims. But now you have a defendant in prison who is just going to crankle his way back up north every opportunity he wants. At some point, doesn't the judge get to say, look, this is not a critical issue, based upon my, what, six years with this case? Well, 30 days after the motion to reconsider sentence is filed, either a notice of appeal is filed or the judge loses jurisdiction anyway, and it's over then. But up until then, yeah, you've got to do your little, you know, do these inquiries. And that's all I have on that issue, unless you, Congress, have any further questions. Thank you. All right, counsel, thank you very much for your arguments in this matter, and even the ones that you didn't make in this matter. I don't know, it's a little confusing. But we will make a decision in due course, and we will at this point stand adjourned.